FILED
2013 Nov-13  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

AMY D. MOSS,

     Plaintiff,

vs.                         CASE NO. CV-12-J-3811-NW

FRANKLIN COUNTY BOARD OF
EDUCATION,

     Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 11), brief in support of said motion (doc. 13) and evidentiary submissions (doc. 12). The plaintiff filed a brief in opposition (doc. 14) and further evidence (doc. 15).

## I.  FACTUAL BACKGROUND

The plaintiff filed a complaint asserting the defendant discriminated against her, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq,* on the basis of her gender, and further retaliated against her, also in violation of the same statute.  Specifically, the plaintiff asserts she was not selected for open coaching positions in the fall of 2011, and that those positions were filled by a male, prior to the positions beings posted as available.  Complaint, ¶¶ 11-15. Plaintiff further asserts she was clearly more qualified that the male selected.  *Id.*, ¶¶

16-20.  The plaintiff also claims she did not receive these coaching positions in retaliation for her prior EEOC charge and lawsuit stemming from earlier non-selections for open positions and termination as a basketball coach. *Id*, ¶ 22. *See also* Memorandum Opinion of February 28, 2013, 3:11-cv-1031-CLS, *Witt, et al., v. Franklin County Board of Education*.

The plaintiff is employed with defendant as a Health and P.E. teacher at Phil Campbell High School.  Plaintiff depo. at 20, 23.  She also serves as the girls track coach and receives a coaching supplement for that. *Id.,* at 17.  Plaintiff's previous suit against defendant stemmed from her termination as girls basketball coach in March 2010.[1]  Plaintiff depo. at 28; *Witt v. Franklin County Board of Education*, Memorandum Opinion of February 28, 2013, at 72-73.  She asserts that after she filed the previous lawsuit against defendant, her job duties changed – first to require she teach financial literacy to eighth graders and thereafter to teach health, in addition to physical education. *Id.*, at 22-24.  These additional teaching duties were referenced in plaintiff's prior litigation and found not to be materially adverse actions. *Witt v. Franklin County Board of Education*, Memorandum Opinion of February 28, 2013,

---

[1]This termination was the subject matter of plaintiff's prior suit, which was dismissed at the summary judgment stage. *See Witt v. Franklin County Board of Education*, Memorandum Opinion of February 28, 2013, at 52-57.  Because that termination has been fully litigated, the court does not delve into the factual basis for the same, although those facts are extensively referenced by the parties in plaintiff's deposition for this current action, and the pleadings.

at 72-73. The court thus considers only the factual allegations and testimony relevant to plaintiff's non-selection in August and September 2011 as Girls Basketball Coach and Girls Softball Coach at Belgreen High School, and only to the extent the same relate to her claims for disparate treatment and/or retaliation.

Gary Williams is Superintendent of the Franklin County school system. Williams depo. at 9. Available positions within the school system are required to be posted.[2] *Id.* at 24. According to the plaintiff, after hearing in August 2011 that Richie Hester, a history and science teacher at Vina High School, had assumed the vacant positions of Girls Basketball Coach and Softball Coach, plaintiff called the Board of Education, and asked when the job would be posted.[3] Plaintiff depo. at 134-135, 141, 158. It was posted the next day. *Id.*, at 134, 158-159; plaintiff ex. 2 to Williams depo. The plaintiff also contacted the assistant principal at Belgreen High School, Robyn Bragwell, to confirm whether the rumors she heard about Richie

---

[2]Williams questioned whether coaching supplement positions require posting, but posts them anyway. Williams depo. at 24-25. When a position involving a coaching supplement is available, and the school principal wants to fill the same with someone already on staff, the principal just notifies the Board of Education each year as to who is receiving which supplements. Id. at 25-26.

[3]No evidence supports a finding that Hester had already assumed these duties. Rather, all the evidence, except for the rumors plaintiff repeatedly cites, reflects that Hester met with any girls interested in playing basketball for Belgreen to see if there was enough interest to support a basketball team. *See e.g.*, Hester depo. at 64-65. Similarly, all of the evidence supports a finding that Hester attended a softball practice being run by Coach Welch, who was leaving. Hester depo. at 59-62. Plaintiff's citation to Williams' testimony for her argument otherwise is mistaken, as the page and line cite does not have any relevance to this issue. *See* plaintiff's brief at ¶ 31, citing Williams depo. at 40.

Hester assuming these job duties was true. *Id.,* at 140-142. This contact was through *facebook. See* defendant ex. 6 to plaintiff depo.

Williams and the board member for the district where the vacancy exists determine jointly whether there is a need to interview for a position. Williams depo. at 26. In regard to the vacant coaching positions, the prior basketball coach remained as a teacher at the school, so there was no teaching unit associated with it.[4] *Id.* at 32-33. No current teacher at Belgreen was interested in these coaching positions. Shannon Oliver depo. at 21. According to Williams, when Steve Pounders, the Belgreen principal, told him the position needed posting, the superintendent's office posted it. Williams depo. at 34. Pounders explained he waited to post it until the end of August 2011 because he was trying to convince the resigning basketball coach, Shauna Humphries, not to quit coaching. Pounders affidavit, ¶ 2. Not until August 2011 did Ms. Humphries convince Pounders she would not continue to coach. *Id.*

The plaintiff has never taught or coached at Belgreen High School. Plaintiff depo. at 146-147. She applied for the open Basketball Coach position, but did not

---

[4]The undisputed evidence is that the vacant coaching positions provided only supplements on top of regular teacher salaries. Because the teacher who had been coaching Girls Basketball remained as a teacher, there was no teaching position to be filled. The defendant was therefore limited to finding someone who was already a teacher within its school system to take on the additional duties. Similarly, Girls Softball had been coached by a community volunteer. Again, there was no vacant teaching position to be filled, but only a salary supplement for whomever took on this role.

4

receive an interview.  *Id*. at 159, 162-163; defendant ex. 8 to plaintiff depo.
According to plaintiff, the softball position was never posted as available, and Richie
Hester had already assumed that duty when the Basketball position was posted.[5]
Plaintiff depo. at 162.  Williams intended that the softball vacancy be part of this
posting, but due to an oversight it was not.  Williams depo. at 40.  The only two
applicants were plaintiff and Hester.  Williams depo. at 34-35, 63; plaintiff ex. 2 to
Williams depo.; Richie Hester depo. at 49.

Shannon Oliver is the Board member for the area which includes Belgreen
High School.  Plaintiff depo. at 149-150.  Also according to plaintiff, Oliver wanted
Hester in these coaching positions.  *Id*. at 190, 204-205.  Oliver did in fact want
Hester hired, and told Williams that he thought Hester would do a good job.  Oliver
depo. at 26.  He further explained that

> at the time, at the school, girls were upset.  It was a lot of turmoil there,
> you know, because they all liked Shauna.  A lot of them didn't know if
> they was going to play.  You heard this one wasn't going to play.  Some
> of them, I believe, had done looked at options of going to other schools.
> And at the time, to be honest, I had heard about the things that has
> happened at Phil Campbell.  I've got a lot of friends out there, played
> baseball out there for years.  You hear those rumors.  You know, I can

---

[5]In her brief, plaintiff asserts Richie Hester was contacted by Pounders between August
15-19, 2011, regarding the vacant coaching positions.  Plaintiff's brief, at 6. This was not
Hester's testimony.  Rather, he testified that sometime before August 29, 2011, and he could not
pin point when, he received a call from someone, but could not say whom.  Hester depo. at 50.
As previously noted, the overwhelming evidence does not support a finding that Hester assumed
the coaching duties prior to being hired for the coaching positions in September 2011.

remember watching [plaintiff] coach one night – or probably a few nights.  I remember her coaching, and I can remember seeing some of her antics.  You know, I thought she managed the game good; but at times I don't know, calls and stuff, I seen her get teed up a time or two....

.... And I really looked at where the state of the school was right there as far as girls' sports, and some of those – some of the girls that we had that was on that basketball team, a lot of them had been playing youth league, a lot of them knew Richie.  You know, I called around to some parents, and especially some of the seniors, and I asked them, I said, " You know, this is where we are," And when it come down to it and when I knew Richie was wanting the position, and Steve finally said "Good" and he was going to go to Gary with it, I said there wasn't no need to interview nobody else, I mean.  I just didn't want the way everything was going at Phil Campbell to come down and make Belgreen's problems worse at the time.

Oliver depo. at 35-37.

Hester was informally interviewed by Pounders and Shannon Oliver.  Williams depo. at 35; *see also* Oliver depo. at 29-30.  Hester also met with students at Belgreen interested in softball or basketball prior to being hired.  Williams depo. at 63-64.  For softball, he met with them for an evaluation being conducted by the coach that was leaving, after having received permission to do the same from Pounders.[6]  Williams depo. at 64-65, 75-76; Pounders affidavit, ¶ 6; Richie Hester depo. at 60.  Had

---

[6]The undisputed evidence is that the Girls Softball coach at Belgreen, Dustin Welch, was a volunteer, who announced he was not going to keep coaching, shortly after Shauna Humpries had said she would not continue as the Girls Basketball coach.  See e.g., depo. of Oliver, at 19-20.

plaintiff requested to do so, she would have been allowed to meet with the teams as well.  Williams depo. at 65.

In the Board meeting on September 6, 2011, Richie Hester was hired for these positions.  Plaintiff depo., at 165-166; Richie Hester depo. at 57.  Pounders made the recommendation to hire Hester.  Williams depo. at 40, 66; plaintiff ex 2 to Williams depo.; Pounders affidavit, ¶ 5.  Williams recommended Hester as well, because Hester had ties to the community, graduated from Belgreen High School, lived in the area, and was a decent coach.  Williams depo. at 42, 85.

In her deposition the plaintiff makes passing reference to a comment by Board of Education member Shannon Oliver to Board of Education member Terry Welborn, concerning plaintiff's husband's application for an administrative position.[7]  Plaintiff depo. at 152-153.  According to plaintiff, Oliver questioned why anyone would hire him when plaintiff had sued the Board of Education.  *Id.,* at 153, 155-156.

The plaintiff asserts Hester was previously fired by the Board of Education for allegedly having a relationship with one of the members of the girls basketball team, which he coached at the time.[8]  Plaintiff depo. at 167.  He was also accused of selling

---

[7]Plaintiff's husband, referred to in the depositions as Bart Moss or Joe Bart Moss, is a teacher in the defendant school system.

[8]Plaintiff agreed that this accusation was raised in the prior litigation, in which Mr. Hester was deposed.  Plaintiff depo.at 178.  She agreed that he testified that he did not start dating the player in question until after she graduated high school, and that they eventually married.  *Id.,* at

drugs in the Vina, Alabama area.  *Id.* at 167-168.  Plaintiff recognizes that Hester denied this.  *Id*. at 168.  The plaintiff asserts these rumors as evidence that Hester and other men in defendant's employ have been given more than one opportunity after being accused of misconduct, but she has not.  *Id.* at 179.

The plaintiff asserts she was more qualified to coach both Girls Basketball and Girls Softball than Hester.  She does not have any personal knowledge of Hester's experience as a coach, but believes they have similar experience, although she may have more years of coaching experience.  Plaintiff depo. at 201-202.  Williams believed plaintiff and Hester's experience to be similar.  Williams depo. at 43.  Williams stated plaintiff does not relate well to young people because she can be abusive to them and uses inappropriate language.  Williams depo. at 36.  Williams also testified that in the past, a male coach who used inappropriate language was going to be fired for it, but that individual resigned first.  Williams depo. at 37-38.

---

178, 181-184.  Like plaintiff, Hester was relieved of his coaching duties, in 2002.  Richie Hester depo. at 24.  The principal of Vina High School, where he coached and taught history and science, provided no explanation as to why he was removed as a coach, but Hester believes it was so his coaching supplement could be used as an enticement for a football coach. *Id.,* at 24-25.  At no time was he terminated from his teaching duties.  *Id.*, at 26. The superintendent who recommended his removal was Bill Moss, who is plaintiff's father in law.  *See e.g.*, Baker depo. at 29.

Because both Williams and Pounders already knew both Hester and Moss, they did not see a need to conduct interviews for the softball/basketball coaching position.[9] Williams depo. at 89, 99.  Between the two of them, Williams believed Hester to be a better fit for the coaching job because he lived in the community, grew up in the community and worked near there.  *Id.*, at 89-90.  Based on plaintiff's behavior that caused her to be terminated from coaching girls basketball at Phil Campbell high school, Williams did not think plaintiff would have any rapport with the Belgreen students or community.  *Id.*, at 90.  In other words, defendant asserts it picked the most qualified applicant for the position.  Plaintiff ex. 5 to Williams depo. at 5. Board member Ralton Baker explained that everyone agrees the plaintiff is a good coach, and that no one denies that.  Baker depo. at 41.  However, the School Board has a problem with her attitude, and he has had parents call to say their children would not play if she was coaching.  *Id.*

Plaintiff asserts she was more qualified that Hester based solely on the number of years of coaching experience each had.  Moss declaration, ¶¶ 52-53; plaintiff's

_____

[9]As Ralton Baker, one of the school board members explained,

Franklin County is a rural area. Usually we know everybody and sometimes, you know -- there comes a point in time you've got to know who you're going to hire and why go interview and have people burning gas coming up there if you don't think they -- we don't need to interview, we don't, if we want to hire somebody.

Baker depo. at 22.  He further explained they will look at the applicants and if he thinks they need to do interviews, they have them.  *Id.*, at 25.  They try to find someone with good morals that can coach also.  *Id.*, at 32.

brief at ¶¶ 60-61.  After this action was filed, the plaintiff filed additional charges of discrimination with the EEOC based on her non-selection for administrative positions with the defendant.  Plaintiff depo. at 193.

## II.  STANDARD FOR EVALUATING SUMMARY JUDGMENT

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).  Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11ᵗʰ Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11ᵗʰ Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11ᵗʰ Cir.2005).

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11ᵗʰ Cir.2001); *Stewart v. Booker T. Washington Insurance.*, 232 F.3d 844, 848 (11ᵗʰ Cir.2000).

### III. LEGAL ANALYSIS

*A. Discrimination/Failure to Hire*

A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason

proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination. *Wilson v. B/E Aerospace, Inc*,. 376 F.3d 1079, 1088 (11th Cir. 2004), citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147-48, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

Plaintiff asserts that she did not receive the Girls Basketball/Softball coaching position at Belgreen High School due to gender discrimination and retaliation for filing EEOC charges. As the court can find no direct evidence of discrimination, the court must apply the three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), as required for circumstantial evidence. *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997). Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996). The defendant can feasibly present such strong

evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987).

An employer's stated reason is not a pretext unless it is shown that both: (1) the reason was false; and (2) the real reason was unlawful. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff may show a pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005). In both instances, a plaintiff must show pretext with "concrete evidence in the form of specific facts." *Bryant*, 575 F.3d at 1308. Mere "conclusory allegations and assertions" will not suffice. *Id.*

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant

meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets her prima facie burden of proof by establishing that (1) she is a member of a protected class; (2) she was qualified for the position;  (3) she was subjected to an adverse employment action; and (4) she was treated less favorably by her employer than similarly situated employees outside her protected  class.[10] *Maynard v. Board of Regents of Div. of Fla. Dep't of Educ.,* 342 F.3d 1281, 1289 (11th Cir.2003)*; Rice-Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 842-43 (11th Cir.2000); *EEOC v. Joe's Stone Crab, Inc.,*  220 F.3d 1263, 1286 (11th Cir.2000). "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects...." *Knight v. Baptist Hosp.*

---

[10]Plaintiff cites cases in support of a "failure to hire" standard, rather than a disparate treatment standard.  In *Maddox-Jones v. Board of Regents of University System of Georgia*, the Eleventh Circuit observed that a failure to hire standard would not be appropriate where the plaintiff was already hired and the issues arose during the course of that employment.  *Id.*, 448 Fed.Appx.17, 20 n.3 (11th Cir.2011).  The Court explained that "being assigned to teach different classes is not a demotion, but being assigned fewer classes is an adverse employment action. Therefore, we analyze Maddox–Jones's prima facie case under the disparate treatment formulation." *Id.* Clearly, the failure to obtain a coaching supplement is an adverse employment action.  The application of a failure to hire standard requires proof that plaintiff (1) was a member of a protected class; (2) applied for and was qualified for an available position; (3) was rejected; and (4) the defendant filled the position with a person outside the protected class. *Walker v. Prudential Prop. And Cas. Ins. Co.*, 286 F.3d 1270, 1274-75 (11th Cir.2002). Because defendant does not contest that plaintiff can meet her prima facie burden under either standard, the same is a distinction without meaning under the facts of this case.

*of Miami, Inc.*, 330 F.3d 1313, 1316 (11ᵗʰ Cir.2003) (internal quotation marks omitted).

The court has read the parties' evidentiary submissions.  Lacking from the submissions is any evidence at all that the plaintiff's gender was considered in filling the coaching position.  Assuming, without deciding, that the plaintiff could satisfy her prima facie case, the defendant sets forth an explanation for its actions that is not discriminatory in nature.  *See e.g., Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11ᵗʰ Cir.1999).  Defendant's burden to articulate a non-discriminatory reason for failing to hire a plaintiff is a burden of production, not persuasion, and involves no credibility determination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Vessels*, 408 F.3d at 769 (noting that there is no credibility determination made when the employer proffers a legitimate, non-discriminatory reason).  Accordingly, this burden has been described as being "exceedingly light." *Vessels*, 408 F.3d at 769–70.

Here, the defendant asserts it selected Hester because he lived in the Belgreen community and had the support of the community.  Clear from the evidence is the fact that the defendant did not take winning records as coaches into consideration.  For example, Board member Randy Hester testified that the qualities he seeks in a coach are

15

... a good teacher, because most of the time that's what we hire, is teachers. And I like some good morals, I mean, of course being able to coach is nice, but I don't think that's the most important thing in high school, especially at my school, where you don't have very many kids to start with. I mean, it's important that they try to teach them about life more than how to win and lose in a ballgame. I guess that record at my school reflects that, too, because we don't have very much success at athletics.

Randy Hester depo., at 24-25. Similarly, Shannon Oliver testified that the most important thing he looked for in a coach was

work ethic..... How he or she can manage in the community. A lot of these small towns, some sports are the heartbeat, and Belgreen is one of them. And somebody that can come it and work hard and work together with everybody, get a lot of people involved, a lot of good vibes from everybody, just somebody that can lead.

Oliver depo. at 25.

Because defendant has met its burden, the presumption of discrimination is eliminated and the plaintiff must "come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Vessels*, 408 F.3d at 771. In attempting to rebut the employer's proffered reason, the plaintiff is not allowed to recast the employer's reasons or to substitute her business judgment for the employer's judgment. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2000) (en banc) .

Plaintiff first argues that she was the better qualified coach, based solely on her years of experience and win/loss records.  However,  "a plaintiff cannot prove pretext by simply arguing or even by showing that [s]he was better qualified than the person who received the position [s]he coveted." *Springer v. Convergys Customer Mgmt. Grp.*, 509 F.3d 1344, 1349 (11th Cir.2007) (internal brackets & quotation marks omitted). The plaintiff "must show that the disparities between the successful applicant's and [her] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.* (internal quotation marks omitted).  As previously discussed, the defendant put forth substantial evidence that it did not consider coaching records in a vacuum, but rather wanted to fill the vacancies with someone who would build a sense of community in Belgreen.   While plaintiff discounts this explanation, the court cannot.   As the Eleventh Circuit recently reiterated

> ...in enacting Title VII Congress did not intend to transform federal courts into a "super-personnel department that reexamines an entity's business decisions." *Chapman*, 229 F.3d at 1030 (citation & internal quotation marks omitted). Our job is instead to determine "whether the employer gave an honest explanation" to justify its hiring decisions. *Id*. If the employer gives one, we're not in a position to "second-guess [its] business judgment," *id.* Because Kidd's argument regarding why she was more qualified than Seo calls into question Mando's business judgment—not its honesty—it is one we must reject.

*Kidd v. Mando American Corp.*, 731 F.3d 1196, 1207 (11th Cir.2013).

The plaintiff next argues that defendant's reasons are pretextual because in 2002 Hester was removed from his coaching position.  Williams asserted that due to the amount of time that had passed, Hester was given  another chance.  Williams depo. at 49, 93.  In contrast, there was ample testimony that plaintiff's termination from coaching was due to her continuous issues, without any attempt to do anything better.  *See e.g.,* Randy Hester depo. at 32; Williams depo. at 91-92, 108-109.  For example, Randy Hester testified that he received phone calls from parents that plaintiff "was not a very nice person, hateful to kids..."  *Id*., at 32.  Williams also stated that plaintiff had been given multiple chances, but never proven she had learned anything. Williams depo., at 49-50.  Additionally, despite plaintiff's repeated attempts to make Hester's 2002 removal from coaching about his dating a student, the evidence does not support such a conclusion.  Rather, the evidence is clear that the two events were unrelated.  *See e.g.*, Randy Hester depo. at 27, 33-34.

The plaintiff argues that a football coach at another school was given a fourteen day suspension for receiving a DUI, while she was terminated for cussing and belittling students, is evidence that "the Board has a history of discriminating against females..." Plaintiff's brief, ¶ 50 and pp. 12-13 n.3.  The court finds such an argument meritless.  Clearly, plaintiff's interactions with her own players is wholly different

from another coach's poor judgment away from his team.  The two are simply not comparable.  There is evidence, however, that a male coach who used inappropriate language with his players resigned before he could be terminated.  *See* Williams depo. at 37, 38.  Bolstering the finding that the selection had nothing to do with gender is the evidence that Pounders, who apparently made the recommendation to hire Hester, most of all wanted Shauna Humphries, a female coach, to remain coaching.  *See e.g.,* depo. of Oliver, at 24.

Having considered the foregoing, and being of the opinion that the plaintiff has failed to demonstrate any genuine issue of material fact on her claim of gender discrimination, such that a jury could find in her favor on this claim, the court shall grant the defendant's motion for summary judgment on this claim by separate order.

*B.  Retaliation*

As to plaintiff's claims for retaliation, under Title VII the plaintiff does not have to prove the underlying claim of discrimination in order to establish a retaliation claim.  *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir.1999).  To establish a prima facie case of retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard, discussed in detail, *supra*.  To survive a summary judgment motion for a claim of retaliation, the plaintiff  must show that she (1) engaged in Title VII protected activity; (2) adverse employment actions

19

occurred; and (3) causal connections between the protected activity and the adverse employment actions exist. *Brochu v. City of Riviera Beach,* 304 F.3d 1144, 1155 (11th Cir.2002); *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999). S*ee also Runyon*, 175 F.3d at 868, citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).   The plaintiff must further prove that but-for her prior claim, she would have gotten the coaching position. *See University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

Plaintiff claims that a comment from one board member in the context of consideration of his application for a promotion is evidence of direct retaliation by defendant.[11]  Plaintiff's brief, at 29-30.  However, direct evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir.1999).  The statement in question simply does not rise to such a level.  To the extent that the plaintiff asserts her husband was not promoted because she engaged in protected activity, the court notes the volume of evidence that an individual with significantly more extensive administrative and teaching experience,

[11]The court questions how Bart Moss's non-selection for a promotion could be direct evidence that plaintiff was not selected for a coaching position because of her prior lawsuit. Rather, a statement such as "Amy Moss cannot be considered for the coaching supplements because she sued the Board of Education" is direct evidence.  The allegation concerning Mr. Moss is circumstantial evidence of discrimination against the plaintiff.

rather than Mr. Moss, was hired as principal at Phil Campbell High School. *See e.g.*, depo. of Terry Welborn, at 25-26; depo. of Oliver at 45-48.

The plaintiff did engage in protected activity when she filed a claim of discrimination in her earlier lawsuit.   Because the non-selection for the coaching supplement is an adverse employment action, the plaintiff must show that but for her protected activity, she would have received the coaching positions.  *See University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2528 (2013).  Here, the plaintiff has failed to make any showing such that a reasonable jury could find in her favor on this claim.  Rather, the evidence supports a finding that winning records and years of experience were not the primary considerations of the Board when selecting a candidate to fill the vacant coaching positions.  Rather, the Board member for that district wanted someone who would bring a sense of community to Belgreen. Because plaintiff cannot demonstrate this explanation to be false, the court must grant judgment in defendant's favor on this claim.  *See e.g., Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th  Cir.1991)  (explaining that plaintiff cannot create a triable pretext issue by raising a question about the correctness of the facts underlying an employer's explanation without impugning the employer's honest belief that those facts are true).

## CONCLUSION

The court having considered the foregoing, and finding that no genuine issues of material fact exist and that the defendant is entitled to judgment in its favor on all counts of the plaintiff's complaint, the defendant's motion for summary judgment shall be **GRANTED** by separate Order.

**DONE** and **ORDERED** this the 13th  day of November, 2013.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE